UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                     CASE NO.

**JERRY MICHAEL HOLLANDER**                               **04-14550**
**SHEILA STORY HOLLANDER**                                SECTION A

DEBTORS                                                   CHAPTER 7

**RONALD J. HOF**                                         ADVERSARY NO.

PLAINTIFFS                                                **09-1111**

VERSUS

**GBS PROPERTIES, LLC d/b/a PRUDENTIAL**
**GARDNER REALTORS, EARL C. MENDOZA, JR.,**
**AND MARILYN MENDOZA**

DEFENDANTS

## MEMORANDUM OPINION

On August 24, 2009, plaintiff, Ronald J. Hof, chapter 7 trustee for Shelia and Jerry Hollander, ("Trustee"), Jerry and Sheila Hollander (collectively "Hollanders"), filed suit against defendants, GBS Properties, LLC d/b/a Prudential Gardner Realtors ("Prudential") and Earl and Marilyn Mendoza (collectively "Mendozas").   Trial in this matter was held on March 11 and 12, 2010.   The Court ordered the filing of post-trial briefs no later than March 31, 2010.   After the filing of post-trial briefs, the Court took the matter under advisement.

### I. Facts

In 1994, the Hollanders contracted to build a house at 2665 Claiborne Street, Mandeville, Louisiana ( "Claiborne House").   In August 2000, the wood floors in the first story began to cup and buckle.   Ultimately, extensive repairs were required to the wood floors, subfloors and floor joists as a result of poor ventilation in the crawl space under the house.

In September 2000, the Hollanders met realtors Earl and Marilyn Mendoza, Prudential agents, while looking for another home.  On September 29, 2000, the Hollanders bought their current house at 271 Evangeline Drive, Mandeville, Louisiana ("Evangeline House").   The Mendozas were the realtors for both the sellers of the Evangeline House and the Hollanders.

On May 17, 2001, the Hollanders filed suit against the original builder, insulation company, and floor finisher of the Claiborne House.[1]

In May 2001, the Hollanders listed the Claiborne House for sale with Stephanie "Stevie" Mack of Stirling Properties.

On October 3, 2001, the Hollanders changed realtors.  They listed the Claiborne House with the Mendozas.   They signed a property disclosure statement indicating, "Replaced glued down Brazilian cherry flooring with nailed down flooring throughout first story" ("Property Disclosure").[2]

The standard realtors' disclosure statement, as it existed in 2001, required a seller to answer 25 questions and to identify in detail the circumstances surrounding any condition identified by an affirmative response to the standard questions.  Question 8 asks the seller if any alterations have been made to the home.  The Hollanders answered "yes," and noted that a pool was added and that they "[r]eplaced glued down Brazilian cherry flooring with nailed down flooring throughout first story." Question 15 asks the seller to identify any known defects in the property, to which the Hollanders responded in the negative.

---

[1] *Hollander v. Coastal Insulation, of Louisiana, Inc., et al*, 2003-11462G, 22nd Judicial District Court, Parish of St. Tammany.  Exhibit 2.

[2] Exh. 4.

2

On March 29, 2002, Robert and Rhonda Sigillito (collectively "Sigillitos") agreed to purchase the Claiborne House and signed a Purchase Agreement. The Mendozas represented both the Hollanders and Sigillitos, who signed a Consent to Dual Agency.[3]

The Sigillitos filed suit against the Hollanders in state court. The suit alleged redhibitory defects relating to continuing poor ventilation in the crawl space. ("State Court Suit").

On June 15, 2004, the Hollanders filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.[4]

On September 10, 2004, the Sigillitos filed a complaint to determine the dischargeability of the claims asserted in the State Court Suit ("Discharge Suit"). The Discharge Suit incorporated the allegations of the State Court Suit. Because the State Court Suit had not been reduced to judgment, this Court was required to liquidate the Sigillitos' claims against the Hollanders in order to determine dischargeability.[5] After a trial on the merits, a nondischargeable judgment in the amount of $26,561.43 was awarded to the Sigillitos in redhibition. The judgment was increased after reconsideration by $1,863.00.

On August 24, 2009, Trustee filed the underlying Complaint against Prudential and the Mendozas alleging breach of fiduciary duty in following respects:

   a. To treat them honestly;
   b. To explain real estate terms to the Debtors, including, but not limited to the importance of disclosure statements; and
   c. To disclose previous repairs and alterations to the property being sold to the purchasers and to act in the best interest of the buyers and sellers pursuant to the provisions of the Dual Agency Designated Agent.

---

[3] Exh. 5.

[4] Case 04-14550, pl. 1.

[5] Adversary 04-1193.

    d. To explain what a Dual Agency Designated Agency consisted of.[6]

The Complaint seeks to hold the Mendoza's responsible as either agents of Prudential or as

independent contractors.  The following damages are sought:

1. Attorney fees and costs to defend the state court and federal adversary
   proceedings;
2. Loss of credit standing in the community;
3. Mental anguish over a seven (7) year period.[7]

## II.  Law and Analysis

    Trustee claims that the Mendozas breached a contractual fiduciary duty owed to the

Hollanders.  The Mendozas aver that the Hollanders' cause of action is, at best, a claim for negligent

representation, which has prescribed.

> A real estate broker is a professional who holds himself out as trained and
> experienced to render a specialized service in real estate transactions.  The broker
> stands in a fiduciary relationship to his client and is bound to exercise reasonable
> care, skill, and diligence in the performance of his duties.  Generally, a broker's
> duties are limited to those which can be analogically drawn from La. R.S. 37:1455
> and from the customs and practices of real estate brokers in general.  Ultimately, the
> precise duties of a real estate broker must be determined by an examination of the
> nature of the task the real estate agent undertakes to perform and the agreements he
> makes with the involved parties.  The failure to disclose to a buyer a known material
> defect regarding the condition of real estate of which the broker or salesperson has
> knowledge is among a broker's duties analogically drawn from La. R.S. 37:1455 and
> from the customs and practices of real estate brokers in general.[8]

    While a realtor is responsible for a breach of his duty, not every failing rises to the level of

a fiduciary breach.

> ...[A] fiduciary's simple negligence should be treated as an offense subject to a one
> year prescriptve period, while deliberate actions, such as fraud, misrepresentation or

---

[6] Pl. 1, p. 6.

[7] Pl. 1, p. 7.

[8] *Hughes v. Goodreau*, 836 So.2d 649, 660, 2001-2107 (La.App. 1 Cir. 2002).

4

conversion would be subject to the ten year prescriptive period.   ...

The distinction between damages ex delicto and ex contractu is that the latter ensue from the breach of a special obligation, and the former from the violation of a general duty. *Aetna Life and Cas. Co. V. Dotson*, 346 So.2d 762 (La.App. 1 Cir. 1977), *writ den.* 349 So.2d 1272; *City of New Orleans v. Southern Bank*, 31 La. Ann. 560 (1879). The breach of a fiduciary duty is the breach of a special obligation, although the same act may constitute the breach of a general obligation as well. The essence of the fiduciary duty lies in the special relationship between the parties. *Beckstrom v. Parnell*, [97-1200 (La.App. 1 Icr. 5/15/98), 714 So.2d 188, *disapproved on rehearing* 97-1200 (La. App. 1 Cir. 11/6/98), 730 So.2d 942]. It is the duty of loyalty which distinguishes the fiduciary relationship. *Id.*[9]

In this case, Trustee argues that the conduct of the Mendozas was in breach of their fiduciary duties in order to take advantage of the longer ten (10) year prescriptive period. Thus, the nature of the claim is important. However, finding a breach of duty or negligent act is primary.

The marketing agreement between the Mendozas and Hollanders provides: "The Seller(s) Designated Agent(s) owes a fiduciary duty of the utmost care and loyalty to the Seller(s)."[10] Trustee bears the burden, however, of proving that the Mendozas' conduct in this case breached those fiduciary duties or was negligent.[11] Specifically, Trustee must prove: 1) existence of a fiduciary duty or obligation; 2) that the Mendozas violated by their conduct; and 3) caused damage to the Hollanders.[12]

Trustee avers that the Mendozas breached their fiduciary duty to the Hollanders because they failed to explain the importance of the Property Disclosure, give instructions on how to complete

---

[9] *dela Vergne v. dela Vergne*, 199-0364 (La.App. 4 Cir. 11/17/99), 745 So.2d 1271, 1275-1276.

[10] Exh. 3.

[11] *Omnitech Intern, Inc. v. Clorox Co.*, 11 F.3d 1316, 1330 (5th Cir. 1994).

[12] *Id.*

5

the Property Disclosure, or define "items of importance."[13]    Trustee introduced no evidence to

prove that the custom and practice of real estate brokers in general is to explain the importance of

the Property Disclosure, give instructions on its completion, and define terms.

Mrs. Mendoza testified that her practice, other than for rural properties, is to advise clients

to complete property disclosures to the best of their ability.   She testified that she does not ask

questions of the client to elicit disclosures,   nor does she explain how the form should be interpreted

or completed.   However, if asked a question, she will respond.   Both Mrs. Hollander and Mrs.

Mendoza testified that Mrs. Mendoza told Mrs. Hollander to complete the Property Disclosure to

the best of her ability.   This suit explores the sufficiency of that advice and if found to be

insufficient, requires a determination of whether its deficiencies rise to the level of negligence or

breach of fiduciary duty.

The Hollanders describe the Mendozas' practice as a "don't ask, don't tell" method.  They

enumerate reasons for the Mendozas' steadfast policy: 1) the Mendozas possess over forty (40) years

of experience regarding claims in the industry for nondisclosure and wish to avoid responsibility for

erroneously advising a client; 2) it is not in the Mendozas' interest to learn of problems or potential

problems with the houses they list because disclosure makes those listings more difficult to sell; and

3) they have a pecuniary interest in selling homes.

The Mendozas' habit of allowing a seller to fill out the property disclosure form without

benefit of their experience and instruction is disconcerting at best.   Realtors are fiduciaries and they

owe clients the benefit of their experience and knowledge.   Professionals can be responsible for acts

of omission, as well as, commission.   Nevertheless, for the reasons explained below, the Court finds

---

[13] Pl. 1, Complaint, p. 4.

that in this case, Mrs. Mendoza discharged her obligation and duty to properly advise Mrs. Hollander regarding the execution of the Property Disclosure.

Prior to signing the Property Disclosure, Mrs. Mendoza and Mrs. Hollander toured the Claiborne House.  During the tour, Mrs. Hollander pointed out details that she believed enhanced the value of her home, and Mrs. Mendoza took notes.[14]  For example, Mrs. Hollander pointed out that if a house was built on the lot next door, the driveway would have to be on the left side of the lot and away from the Claiborne House.  She also informed Mrs. Mendoza that a soundboard existed between the first and second stories making the house quieter.  She advised Mrs. Mendoza of the appraised value of an oak in the front yard and many other characteristics not evident by mere observation, which increased its value or desirability.

The comments made by Mrs. Hollander establish that she is intelligent and keenly aware of what characteristics enhance or devalue a property.         Based on this level of awareness, the Court concludes that Mrs. Hollander also knew that a major repair of wood rot caused by ventilation issues was not a positive attribute.  Mrs. Hollander elected not to mention the extent of the prior problems with the Claiborne House.  She could have solicited her realtor's advice but chose not to. This decision cost the Hollanders years of litigation and ultimately a nondischargeable judgment for damages.  It was a bad decision, and the Hollanders seek to hold the Mendozas' partially responsible for it.  The Hollanders aver that had they known the importance of disclosure or if Mrs. Mendoza had explained the definition of "alteration," a serious and costly mistake could have been avoided.

---

[14] Exh. 26.

Louisiana law provides that realtors must "[e]xplain real estate terms" for their clients.[15] The extent to which an act might qualify as an "alteration" is subject to argument and interpretation. The uncertainty of what constitutes an alteration is precisely why the Mendozas' practice of allowing a client to complete a property disclosure form without instruction is troubling. However, the facts surrounding the execution of the Property Disclosure establish that this time Mrs. Mendoza did not follow her normal practice.

When the Property Disclosure form was initially given to Mrs. Hollander to complete, Mrs. Mendoza followed her stated practice of advising Mrs. Hollander to complete it to the best of her abilities. After she did, Mrs. Mendoza reviewed the form and realized that it failed to include the pool and new floors as alterations under question 8. Because Mrs. Mendoza knew these items had been added by the Hollanders, she instructed Mrs. Hollander to include them.[16] Mrs. Hollander questioned why these items had to be disclosed since she had not done so on the Claiborne House's prior listing with Mrs. Mack.

Mrs. Mendoza testified that she pointedly advised Mrs. Hollander that *all* changes to the property had to be listed. Although this testimony was challenged by Mrs. Hollander, the Court concludes that Mrs. Mendoza is credible on the point. Thus, even though Mrs. Mendoza's practice was not to define terms for clients, she did in fact instruct Mrs. Hollander to list all additions or changes to the Claiborne House. This should have alerted Mrs. Hollander that the extensive replacement of the subfloor and floor joists, including the alteration of ventilation to the house, was an alternation that needed to be disclosed.

---

[15] LA R.S. 9:3897(A)(5).

[16] Tr. T. 3/11/10, p. 98-99 and 105-106.

Mrs. Mendoza had the experience to correctly advise the Hollanders. However, the Hollanders failed to provide the Mendozas with enough facts to raise the Mendozas' suspicions of inquiry. They also failed to ask for advice even after Mrs. Mendoza explained that all changes to the home had to be disclosed. Mrs. Mendoza might have practiced a "don't ask, don't tell" policy for all the reasons the Hollanders' indicate, but in this case, she advised her client of the need to disclose all alterations, identified the alterations she was aware of, and insisted that they be added to the Property Disclosure. At that point, it was incumbent for the Hollanders to seek further advice or supply Mrs. Mendoza the details of the alterations they had undertaken. They did neither.

The Hollanders argue that the Mendozas should have affirmatively inquired as to the existence of any other alterations to the property. The level of detail provided by Mrs. Hollander while showing the Claiborne House to Mrs. Mendoza led Mrs. Mendoza to conclude that she knew the house very well. Since nothing about the Claiborne House's prior problems had been mentioned, Mrs. Mendoza was satisfied that all additions or alterations had been disclosed once the pool and floors were added to the Property Disclosure. Mrs. Mendoza simply had no reason to inquire further.

The Hollanders argue that Mrs. Mendoza was under a duty to inquire as to the reason the floors had been replaced. They argue that Mrs. Mendoza knew that the original glued down floors had buckled. This fact should have alerted Mrs. Mendoza to the existence of a prior or potential problem with the house.[17] The Hollanders maintain that if Mrs. Mendoza had inquired as to the reason the floors were replaced, she would have discovered the details of the preexisting problem. Thus, her failure to inquire further resulted in their loss.

---

[17] Tr. T. 3/11/10 p. 74.

9

Mrs. Mendoza testified that in her experience, the improper installation of glued down wood floors often results in their "popping up" and replacement. If the floors are relaid properly, the problem is solved. Therefore, it never occurred to her that the "popping up" was caused by a more serious problem, and none of the testimony or evidence submitted by the Hollanders established that they or others made the Mendozas aware of the extent or significance of the problems.

Trustee also avers that the Mendozas were aware of the problems existing with the Claiborne House based on prior communications. As such, they had a duty to compel the Hollanders to disclose it or disclose it themselves to the Sigillitos. Realtors acting as dual agents have a duty to "[t]reat all clients honestly," "[p]rovide information about the property to the buyer," and "disclose all latent material defects in the property that are known" to the realtors.[18]

Roy Lilley testified that on September 29, 2000, at the closing on the Evangeline House, Mrs. Mendoza asked Mrs. Hollander if the "repairs" had been started.[19] Mrs. Hollander corroborated this testimony.[20] Mr. Lilley also testified that Mrs. Hollander and the lender discussed the repairs.[21] Mrs. Hollander corroborated this testimony.[22] The Hollanders claim that because the Mendozas knew of the work at the Claiborne House, whether disclosed by Mrs. Hollander or not, they had a duty to disclose these facts to the Sigillitos as sellers' agents.

---

[18] LA. R.S. 9:3897(A)(1), (2), and (3).

[19] Tr. T. 3/11/10, p. 11.

[20] Tr. T. 3/11/10, p. 175-176.

[21] Tr. T. 3/11/10, p. 13.

[22] Tr. T. 3/11/10, p. 178.

10

The Court accepts that a general discussion regarding the replacement of the floors occurred at the closing on the Evangeline House.  However, neither witness testified that the extent of the repairs was discussed or discussed in any detail.  It is one thing for parties to inquire as to when the "repairs" will begin, another to ask "when the floors will be replaced" and yet another to detail the removal of the entire subfloor and floor joists.  The "conversations," at most passing comments, made on the issue were insufficient to alert the Mendozas to the extent of damage that was being addressed or the repairs required.  They were also in keeping with Mrs. Hollander's later disclosure that she had replaced the glued down wood floors with nailed down Brazilian cherry.  For this reason, the Court finds that the Mendozas were not independently aware of the extent of work or alterations made to the Claiborne House.  As such, they had no duty to disclose unknown facts to the Sigillitos.

There is no showing that the Mendozas treated the Hollanders dishonestly or performed their obligations negligently. There is no showing of an intentional act or fraudulent conduct.  Therefore, Trustee failed to prove that the Mendozas breached a fiduciary duty or committed ordinary negligence in their representation of the Hollanders.

Because the Court finds that the Mendozas neither breached their fiduciary duties nor committed acts of negligence, it declines to address the prescriptive issues presented because they are unnecessary to a determination in the case.  For the same reasons, it is also unnecessary to address Prudential's potential responsibility as the purported employer of the Mendozas.  A separate Judgment will be entered in accordance with this Memorandum Opinion.

New Orleans, Louisiana, May 13, 2010.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

11